# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **FIRSTLIGHT HOMECARE FRANCHISING, LLC,**<br>　an Ohio limited liability company<br>9435 Waterstone Boulevard<br>Cincinnati, OH  45249,<br><br>　　　　**Plaintiff,**<br><br>　v.<br><br>**KIMBERLY OTTEM**<br>4078 Selah Loop Road<br>Selah, WA  98942,<br><br>　　　　**Defendant.** | Civil Action No. 1:18-cv-204 |

## COMPLAINT

1.　　Defendant Kimberly Ottem ("Ottem") is the former Business Development Director for the Western United States for Plaintiff FirstLight HomeCare Franchising, LLC ("FirstLight"). This action arises out of Ottem's leaving her employment at FirstLight to join FirstLight's competitor BrightStar Franchising, LLC ("BrightStar") and her taking with her to BrightStar a laptop computer containing trade secret information belonging to FirstLight.

2.　　In doing so, Ottem breached non-solicitation and non-competition agreements that she had entered into with FirstLight and misappropriated FirstLight's trade secrets. FirstLight seeks monetary and injunctive relief.

## PARTIES

3.　　Plaintiff Firstlight operates and licenses others to operate businesses providing non-medical senior care services under the service mark "FirstLight HomeCare." FirstLight is an

1

Ohio limited liability company with its principal place of business in Cincinnati, Ohio. No member of FirstLight is a citizen of the State of Washington.

4. Defendant Ottem is a citizen of the State of Washington.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a) because FirstLight brings a claim arising under the laws of the United States and other claims so related that they form part of the same case or controversy under Article III of the United States Constitution.

6. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. The Court has *in personam* jurisdiction over Ottem because she has caused injury in this district by her acts and omissions. In addition, Ottem has contractually consented to the jurisdiction of courts in this district.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Ottem occurred in this district. In addition, Ottem has contractually consented to venue in this district.

## BACKGROUND FACTS

### Ottem's Agreements with FirstLight

9. In August 2015, FirstLight hired Ottem to serve as its Business Development Director for the Western United States. Although FirstLight permitted Ottem to work from her home in the State of Washington, she regularly visited FirstLight's headquarters in Cincinnati, Ohio in connection with her employment.

10. On August 24, 2015, Ottem entered into a "Non-Disclosure and Non-Solicitation Agreement" (the "Non-Solicitation Agreement") and a "Non-Compete Agreement" (the "Non-Compete Agreement") with FirstLight. True and accurate copies of these agreements are attached hereto as Exhibits A and B.

11. In the Non-Solicitation Agreement, Ottem acknowledged: "Employee, in the course of the performance of his or her responsibilities to Employer, will be provided certain confidential and proprietary information of FirstLight HomeCare relating to the FirstLight HomeCare system, including but not limited to information concerning equipment, standards, specifications, systems, methods, procedures, techniques and management systems."

12. Among other provisions, the Non-Solicitation Agreement also provided: "Employee shall not, during the term of Employee's employment with Employer or thereafter, use, or communicate, divulge, or use for the benefit of any other person, any Confidential Information (as defined below), knowledge, or know-how concerning the FirstLight HomeCare System or the methods of operation thereunder which may be communicated to Employee, or of which Employee may be apprised, by virtue of Employee's employment in Employer's business operations."

13. The Non-Solicitation Agreement defined "Confidential Information" as "all financial, technical, operational, management and other information . . . which is known by Employee or should have been known by Employee to be confidential to FirstLight HomeCare from the nature of the information or the circumstances of its disclosure."

14. The Non-Solicitation Agreement further provided: "For a period of two (2) years following the termination of the period of Employee's employment with Employer, Employee shall not, directly or indirectly, either as a principal, agent, employee, officer, or director of any

corporation . . . engage in any business offering non-medical senior care services or any business competitive or substantially competitive with, or similar to, a FirstLight HomeCare within the Franchised Areas of any FirstLight HomeCare franchisees or within a ten (10) mile radius of the location of any FirstLight HomeCare owned and operated by FirstLight HomeCare."

15. In the event of her breach or threatened breach of the Non-Solicitation Agreement, Ottem agreed that FirstLight "shall be entitled to injunctions, both preliminary and final, enjoining such breach or threatened breach and to recover . . . any profits [Ottem] may obtain in violation of this Agreement." Further, Ottem agreed that FirstLight would be "entitled to recover its attorneys' fees and expenses" from her "in any successful action to enforce this Agreement."

16. Ottem further acknowledged that the "full extent of the damages which [FirstLight] may suffer from [her] violation of any of [her] obligations pursuant to this Agreement would be difficult or impossible to measure" and agreed that FirstLight would therefore be "entitled to injunctive relief for any violation, plus damages in an amount equal to the profits [Ottem] gained by or from such violation."

17. In the Non-Compete Agreement, Ottem agreed that she would not "be employed by any company . . . in which [she] would be performing any action or service which is substantially similar to or competitive with any service and/or product of Company as now existing or as [she] may undertake during the term of employment," and that this covenant would apply within the "defined territory in which the Company conducts business" for a period of twelve months.

18. In the Non-Compete Agreement, Ottem acknowledged that breach of the covenant contained in that agreement "would damage the company," and that she would

"reimburse the Company for any lost revenue, or future lost revenue, as a result of" her breach. She further agreed to pay FirstLight's reasonable attorney's fees and court costs should it prevail in litigation arising from the Non-Compete.

**Ottem's Employment with FirstLight and Access to FirstLight's Trade Secret Information**

19. In connection with her employment, FirstLight provided Ottem with a laptop computer, an electronic mail account, and access to FirstLight's confidential and trade secret information.

20. FirstLight's confidential and trade secret information was secured by reasonable electronic measures, including user authentication and password-restricted access.

21. The confidential and trade secret information to which FirstLight provided Ottem access included, among other competitively sensitive information and data:

   a. A proprietary technology platform with integrated scheduling software, payroll processing and referral source tracking;

   b. Proprietary intranet dashboards, including operating data for individuals and the entire FirstLight system;

   c. FirstLight system and national alliance revenue figures;

   d. Monthly and annual national alliance revenue reports listing all regional and national accounts;

   e. The FirstLight recruiting toolbox, including advertisements, web ads, messages, social media plans and local marketing materials;

   f. The FirstLight networking toolbox, including marketing and sales system information, training processes and networking contacts for local, regional and national referral sources;

    g. State licensure templates developed by FirstLight; and

    h. FirstLight's national advertising fund marketing strategies for 2016 and 2017;

22. Over the course of her employment with FirstLight, Ottem logged on to the FirstLight server more than 800 times and downloaded 349 documents from the FirstLight intranet library.

23. During January and February 2017, Ottem downloaded 45 different documents, many of which bore no relation to Ottem's duties with FirstLight.

24. On March 3, 2017, Ottem left her position with FirstLight.

25. When Ottem left FirstLight's employment, she took with her FirstLight's laptop computer.

26. All of the documents Ottem had downloaded from FirstLight's intranet library remained on the laptop computer that she took with her when she left her employment at FirstLight.

27. On numerous occasions thereafter, FirstLight requested that Ottem return its laptop computer and the confidential and trade secret information that laptop contained. On each occasion, Ottem admitted that the laptop computer and the confidential and trade secret information it contained belonged to FirstLight, but she nevertheless failed and refused to return the laptop.

28. Following a demand by FirstLight's outside counsel, Ottem finally returned the laptop to FirstLight on January 31, 2018.

### Ottem's Employment by BrightStar

29. On March 12, 2017, Ottem traveled from her home in the State of Washington to BrightStar's corporate headquarters in Illinois.

30. Ottem arranged her travel to meet with BrightStar using the electronic mail account provided to her by FirstLight in order to facilitate her employment with FirstLight.

31. Shortly after her visit to BrightStar's headquarters, Ottem was employed by BrightStar as a field representative assisting and training BrightStar's franchisees in the Western United States.

32. BrightStar is a direct competitor of FirstLight in the provision of franchised and direct non-medical senior care services.

33. Upon information and belief, the services that Ottem performs assisting and training BrightStar's franchisees are substantially similar to, and provided in the same geographical region as, the services that Ottem performed assisting and training FirstLight franchisees.

34. Many of BrightStar's franchised and company-owned retail offices in the Western United States are located and serve customers who are located within the franchised areas of FirstLight's franchisees or within a ten-mile radius of a retail FirstLight office operated by FirstLight, and Ottem is aware of that fact.

35. Upon information and belief, Ottem has disclosed to BrightStar, and has used and continues to use in the course of her employment with BrightStar, confidential and trade secret files and data that she downloaded from FirstLight's server and other confidential and trade secret information that she obtained from FirstLight.

## **COUNT I—BREACH OF CONTRACT**

36. The allegations of paragraphs 1 through 35 are hereby incorporated by reference.

37. The "Non-Disclosure and Non-Solicitation Agreement" and the "Non-Compete Agreement" entered into by Ottem on August 24, 2015 are valid and enforceable contracts.

38. FirstLight performed its obligations under the Non-Solicitation Agreement and the Non-Compete Agreement.

39. Ottem has breached the Non-Solicitation Agreement by:

   a. Using, communicating, or divulging FirstLight's confidential information; and

   b. Engaging in a business that licenses and operates offices that compete with FirstLight offices within the franchised areas of FirstLight HomeCare franchisees and within a ten-mile radius of the location of FirstLight HomeCare offices owned and operated by FirstLight.

40. Ottem has breached the Non-Compete Agreement by:

   a. Being employed by a competing company for which she performs actions and provides services substantially similar to or competitive with actions she performed and services she provided as an employee of FirstLight, within the same territory in which she performed these actions and provided these services on behalf of FirstLight.

41. As a direct and proximate result of Ottem's breaches, FirstLight has suffered and will suffer irreparable harm and economic losses.

**COUNT II—TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONSHIP**

42. The allegations of paragraphs 1 through 41 are hereby incorporated by reference.

43. FirstLight enjoys valid business relationships with its customers, referral sources and health care alliances.

44. These business relationships were reasonably likely to result in future economic benefit to FirstLight.

45. Ottem was aware of the existence of these relationships as the result of her employment with FirstLight.

46. Upon information and belief, Ottem intentionally interfered with these business relationships through the use of confidential and trade secret information that she misappropriated from FirstLight.

47. But for this interference, FirstLight's business relationships with its customers, referral sources and health care alliances would have continued.

48. Because of Ottem's interference, FirstLight has suffered irreparable harm to its business relationships and economic damages.

## COUNT III—MISAPPROPRIATION OF TRADE SECRETS
### in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836

49. The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

50. The FirstLight HomeCare system includes a variety of trade secret information, such as information concerning equipment, standards, specifications, operating and management systems, methods, procedures, techniques, technology platform access and techniques, advertising campaigns, and strategic planning. This information constitutes trade secrets as defined at 18 U.S.C. § 1839(3), to include a "compilation," "method," "process," "procedure" or "technique."

51. FirstLight's lists of actual or potential customers, referral sources and healthcare alliances also constitute trade secrets as defined at 18 U.S.C. § 1839(3), to include a "compilation," "business information," and "financial information."

52. This trade secret information is "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18. U.S.C. § 1836(b)(1).

53. At all relevant times, FirstLight derived "independent economic value, actual or potential" from the fact that its trade secrets were not "generally known to [or] readily ascertainable by proper means by" "other persons who can obtain economic value from [their] disclosure or use." 18 U.S.C. § 1839(3)(B).

54. At all relevant times, FirstLight undertook "reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A).

55. By breaching her "duty to maintain secrecy," Ottem retained FirstLight's trade secrets through "improper means." 18 U.S.C. § 1839(6)(A).

56. Therefore, Ottem knew that FirstLight's trade secrets were misappropriated. 18 U.S.C. § 1839(5)(A).

57. By engaging in the foregoing conduct, Ottem has willfully and maliciously violated FirstLight's rights under 18 U.S.C. § 1836.

58. Ottem was unjustly enriched by her misappropriation of FirstLight's trade secrets.

59. Because of Ottem's misappropriation of FirstLight's trade secrets, FirstLight has suffered and will suffer economic losses and irreparable harm.

**COUNT IV—MISAPPROPRIATION OF TRADE SECRETS**
**in violation of the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61** *et seq.*

60. The allegations of paragraphs 1 through 59 are hereby incorporated by reference.

61. The FirstLight HomeCare system includes a variety of trade secret information, such as information concerning equipment, standards, specifications, operating and management systems, methods, procedures, techniques, technology platform access and techniques, advertising campaigns, and strategic planning. This information constitutes a trade secret as defined at Ohio Rev. Code § 1333.61(D), to include a "process," "procedure," "compilation," "program," "method" or "technique."

62. FirstLight's lists of actual or potential customers, referral sources and healthcare alliances also constitute trade secrets as defined at Ohio Rev. Code § 1333.61(D), to include "business information or plans" or a "listing of names, addresses, or telephone numbers."

63. At all relevant times, FirstLight derived "economic value, actual or potential" from the fact that its trade secrets were not "generally known to [or] readily ascertainable by proper means by" "other persons who can obtain economic value from [their] disclosure or use." Ohio Rev. Code § 1333.61(D)(1).

64. At all relevant times, FirstLight undertook efforts "reasonable under the circumstances to maintain [the] secrecy" of its trade secrets. Ohio Rev. Code § 1333.61(D)(2).

65. By breaching her "duty to maintain secrecy," Ottem retained FirstLight's trade secrets through "improper means." Ohio Rev. Code § 1333.61(A).

66. Therefore, Ottem knew that FirstLight's trade secrets were misappropriated. Ohio Rev. Code § 1333.61(B)(1).

67. By engaging in the foregoing conduct, Ottem has willfully and maliciously violated FirstLight's rights under Ohio Rev. Code §§ 1333.61–1333.69.

68. Ottem was unjustly enriched by her misappropriation of FirstLight's confidential information and trade secrets.

69. Because of Ottem's misappropriation of FirstLight's trade secrets, FirstLight has suffered and will suffer economic losses and irreparable harm.

## COUNT V—DECLARATORY RELIEF
## 28 U.S.C. § 2201

70. Ottem has claimed entitlement to a bonus from FirstLight as a result of her work before leaving FirstLight's employment.

71. At the time she left her employment with FirstLight, no statute, policy, contract, or representation by FirstLight entitled Ottem to any further salary, wages, benefits or bonuses.

72. FirstLight has not since enacted any policy or made any representation that would entitle Ottem to payment of any further salary, wages, benefits, or bonuses.

73. An actual controversy exists between FirstLight and Ottem as to whether Ottem is entitled to any additional payment from FirstLight.

## **PRAYER FOR RELIEF**

WHEREFORE, FirstLight demands judgment against Ottem:

a. Awarding FirstLight the amount of $75,000, or such greater amount as may be shown at trial, for each of the following:

   i. Damages caused by Ottem's breach of her Non-Solicitation Agreement and her Non-Compete Agreement with FirstLight;

   ii. Damages caused by Ottem's interference with FirstLight's business relationships with its customers, referral sources and/or healthcare alliances;

   iii. Expenses incurred by FirstLight in its attempts to recover those business relationships with its customers, referral sources and/or healthcare alliances with which Ottem interfered;

   iv. Damages caused by Ottem's disclosure of FirstLight's confidential information and trade secrets; and

   v. Ottem's unjust enrichment as a result of her misappropriation of FirstLight's trade secrets;

  b. Declaring that no amount, whether in the form of salary, wages, benefits, bonuses, or otherwise, is owing from FirstLight to Ottem from the period of her employment with FirstLight or subsequently.

  c. Preliminarily and permanently enjoining Ottem from further employment with BrightStar in breach of her Non-Solicitation and Non-Compete Agreements as their terms may be equitably extended, and from use of any of FirstLight's confidential or trade secret information.

  d. Ordering Ottem to return or destroy all FirstLight trade secrets in her possession, custody, or control, and to refrain from any future use of knowledge obtained from that information.

  e. Awarding punitive damages on Counts I–II, and exemplary damages on Counts III–IV, as a result of Ottem's willful and malicious conduct.

  f. Awarding FirstLight its attorney's fees and costs incurred in this matter.

  g. Awarding FirstLight such other legal and equitable relief as this Court may deem just and proper.

Respectfully submitted,


*/s/ Michael T. Cappel*
Michael T. Cappel (0079193)
Jacob D. Rhode (0089636)
KEATING MUETHING & KLEKAMP PLL
One E. 4th Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 369-3963
Fax: (513) 579-6457
mcappel@kmklaw.com
jrhode@kmklaw.com

and

Peter J. Klarfeld
Samuel A. Butler
Jan S. Gilbert
GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
600 New Hampshire Ave., NW
The Watergate—Suite 700
Washington, DC 20037
Tel: (202) 295-2200
peter.klarfeld@gpmlaw.com
samuel.butler@gpmlaw.com
jan.gilbert@gpmlaw.com
***Attorneys for Plaintiff***
***FirstLight HomeCare Franchising, LLC***